IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-30003 |
| ) | |
| **WILLIAM FETTIS,** ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant William Fettis' Motion for Compassionate Release (d/e 24) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

### I. BACKGROUND

On January 25, 2017, Defendant William Fettis pled guilty to one count of knowingly and intentionally manufacturing mixtures or substances containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C), and (b)(1)(D) and one count of knowingly possessing firearms in furtherance of a felony in violation of 18 U.S.C. § 924(c)(1)(A)(i). On June 2, 2017, Defendant

was sentenced to 8 months of imprisonment on Count 1 and 60 months of imprisonment on Count 2 as well as a total of 3 years of supervised release. Defendant is currently serving his sentence at Talladega FCI and has a projected release date of May 22, 2022.

On May 31, 2020, Defendant, through retained counsel, filed a Motion for Compassionate Release. See Motion, d/e 24. Defendant seeks compassionate release due to his health issues and the COVID-19 pandemic in BOP in general and specifically at Talladega FCI. Defendant argues that he met the prerequisites for defendant filing such a motion, which are found in 18 U.S.C. § 3582(c)(1)(A), based on requests submitted to BOP. See Motion, d/e 24, p. 3. On April 6, 2020, Defendant submitted a request for a reduction in his sentence or home confinement to an individual named Mrs. Benton, who appears to be the camp administrator. See Exhibit A, d/e 24-1. On April 30, 2020, Defendant received a response stating that he did not qualify for home confinement and that he needed to submit a specific packet if he was requesting a reduction in sentence. See id. On April 26, 2020, Defendant's wife, Mrs. Fettis, sent a request for compassionate release via certified mail to "Ms. Benton or Assistant Warden or Warden." See Exhibit B, d/e 24-2.

A return receipt was signed on April 30, 2020.  See Motion, d/e 24, p. 3.  As of May 30, 2020, the warden had not responded.  See id. Defendant argues that even if the Court finds that Defendant did not meet the 30-day requirement, the Court should excuse Defendant's failure.

On June 3, 2020, the Government filed a response to Defendant's motion.  See Response, d/e 27.  The Government stated that it does not oppose Defendant's Motion.  See Response, d/e 27, p. 2.

On June 5, 2020, the Court held a video conference hearing on Defendant's motion, at which the Court heard a statement made by Defendant Fettis and oral arguments.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory

language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In this case, the Court finds that Defendant met the 30-day requirement pursuant to 18 U.S.C. § 3582(c)(1)(A) as he made two separate requests, both of which were made more than 30 days ago. The request made by Defendant's wife shows that the facility received the request on April 30, 2020.  See Motion, d/e 24, p. 3.

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Defendant Fettis is currently serving 8-month and 60-month consecutive terms of imprisonment for knowingly and intentionally manufacturing mixtures or substances containing a detectable amount of marijuana and knowingly possessing firearms in furtherance of a felony.  Since being incarcerated, Mr. Fettis has not committed any disciplinary violations and has shown good behavior.  Mr. Fettis has also completed rehabilitation programs at the facility.  Though one of Mr. Fettis' underlying crimes involved firearms, he did not use active violence or force in the commission of the crimes.  The Court has reconsidered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

The Court must also consider whether "extraordinary and

compelling reasons warrant such a reduction" and is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Socially distancing can be difficult for individuals living or working in a prison.

COVID-19 has infected Talladega FCI.  As of June 4, 2020, BOP reported that Talladega FCI has 3 inmate and 2 staff active confirmed COVID-19 cases.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed June 4, 2020).

Defendant is a 65-year-old male with a history of high blood pressure, sleep apnea, COPD, and chronic lung infections.  See Motion, d/e 24, p. 3.  His projected release date is May 22, 2022.  All of these factors increase the serious risks of COVID-19 for Defendant.  See Groups at Higher Risk for Severe Illness, Centers

for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed June 5, 2020)("Chronic lung diseases, such as chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis and cystic fibrosis, may put people at higher risk for severe illness from COVID-19 . . . . Older adults, 65 years and older, are at higher risk for severe illness and death from COVID-19."); Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed June 4, 2020) ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased

illness severity and adverse outcomes.").

The Court also considers whether Defendant is a danger to the safety of any other person or to the community. See U.S.S.G. § 1B1.13.[1]  If Defendant quarantines himself at his wife's home away from his wife and any other household members, it will diminish the risk of spreading the virus.  Otherwise, the Court does not find that Defendant poses a danger to the community.

The Court, taking all the relevant facts into account, finds that Defendant has established the existence of extraordinary and compelling reasons that warrant a reduction in his term of imprisonment, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Fettis' motion for compassionate release (d/e 24) is GRANTED.  The Court hereby reduces Defendant's term of imprisonment from 8 months on Count 1 and 60 months on Count 2 to time served.

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisoners."  No policy statement provides guidance for when a defendant files a motion.  Nevertheless, the Court considers § 1B1.13.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend six months on home confinement, which would include a strict 14-day isolation quarantine, with the home confinement starting as soon as possible after his term of supervised release begins.  While on home confinement, Defendant shall first be monitored by telephone then monitored by GPS as determined by the U.S. Probation Office.  All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to release Defendant within 24 hours of BOP receiving a negative COVID-19 test.[2]  The Clerk is DIRECTED to send a copy of this Opinion to Talladega FCI.  Defendant must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from Talladega FCI to his wife's house.  Defendant shall travel to his wife's home, in a vehicle that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  June 5, 2020.

---

[2] On June 5, 2020, the Court entered a text order directing the Bureau of Prisons to administer a COVID-19 test to Mr. Fettis within 24 hours.

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE